A. D. GRIEFF & CO. *v.* MADISON COWGUILL.

(No. 6,680.)

1. A merchant in Cincinnati consigned merchandise to his factor in New Orleans, for sale, who, without the instructions or advice of his principal, shipped a portion of the property to New York, where it was sold at a loss. The factor is bound to pay to his principal the market value in New Orleans at the time the property was shipped.

2. If the factor, at the request of the principal, reships to Cincinnati a portion of the property sent to New Orleans, he has the right to retain the same in the hands of his agent there, until his lien for advances is paid; and the principal can not obtain the possession until he has paid, or tendered the amount of such advances: the factor having his lien for his general balance of account.

SPECIAL TERM.—The plaintiffs claimed to recover of the defendant a balance alleged to be due to them as his factors. The account between them was made up of merchandise con-

signed by the defendant, and advances made by the plaintiffs.

The amount alleged to be due was $1,641.45, for which, it was admitted, the plaintiffs were entitled to judgment, unless the defendant's counter-claim was allowed.

This counter-claim arose upon the following state of facts :

1. That a part of the property shipped from Cincinnati to New Orleans for sale, to wit : Fifty-four firkins of butter were sent by the consignees to New York, without the consent of the consignor, and sold there at a less price than they would have brought, at the time, at the place of consignment. It is, therefore, claimed that the loss in price, and all extra charges for freight, insurance and commissions, should be deducted from the plaintiffs' account.

2. That the plaintiffs, at the request of defendant, reshipped to Cincinnati, from New Orleans, ninety half barrels of butter ; but, instead of delivering the same to the defendant, the property was sent to the consignee of the plaintiffs, with directions not to deliver to the defendant until he should pay a bill, drawn on him by plaintiffs, for the amount for which they were then in advance to him. On the arrival of the butter, the draft was presented, but payment was refused ; and the property remained in the hands of the plaintiffs' agent here until it was sold, and the proceeds credited to the defendant.

This sale, it was said, was made without authority, and at a less sum than the market price, for which, and all extra commissions, charges, etc., the defendant asked to recoup.

*Johnston & Carroll*, for plaintiffs.

*Fox and Fox & J. L. Miner*, for defendant.

STORER, J. Upon the facts in this case two questions are presented—

1. As to the right of the consignees, in New Orleans, to send the property to New York for sale.

2. What was the right of the plaintiffs' agent in Cincinnati to retain the butter sent back from New Orleans, until the bill drawn for advances had been paid.

There can be no doubt, as a general rule, that an agent or factor can not depute the authority, conferred upon him by another, without the assent of his principal; but where, from the nature of the trust, it can not be expected that he should accomplish it all by his own personal exertions, he will be allowed to employ others to assist him ; such as a deposit of goods with a warehouseman, and the employment of brokers, auctioneers, and such other agencies as are necessary to secure the safe keeping of the property, and effect sales.

And this apparent delegation of authority may be regarded as the exercise of a power impliedly contained in his appointment, subject to all the caution and prudence he is bound to exert, independently of the delegation, and not to exceed what is strictly proper, or is warranted by the usage of trade.   Smith's Mercantile Law, 148; Dunlap's Paley, 177 ; 17 Mass. 108, *Amory* v. *Hamilton*.  But we can find no case where a factor is permitted to send the property confided to his care to another port, unless by the advice or assent of his principal.

It seems to be intimated that there is an usage, in New Orleans, which justifies such a course ; but none such is proved, and, if it were proved, we should be unwilling, in a case like this, to adopt it as a part of the law merchant, as it violates the established principle, that where the confidence is personal, it can not be assigned to a stranger.   It was well said by Lord Ellenborough, in *Cockran* v. *Irlam*, 2 Maule and Selwyn, 303, " A principal employs a broker from the opinion he entertains of his personal skill and integrity, and a broker has no right, without notice, to turn his principal over to another of whom he knows nothing."

We find, however, one case in which the doctrine is put hypothetically, and it might seem the established rule had been relaxed.   The court of appeals of Kentucky, in 6

Dana, 383, *Wallace et al.* v. *Bradshaw et al.* held that the established usage might, in a proper case, if satisfactorily proved, authorize the factor to reship. If we should grant the soundness of the rule, thus affirmed, we must apply it strictly to the case assumed ; but we must be permitted to doubt the propriety of the rule itself, as well as the reasoning of the court. No adjudicated case is referred to, nor is the principle decided sustained upon any other ground than that of analogy.

We find, however, in *Catlin* v. *Bell*, 4 Camp. 183, in a case where a shipmaster, to whom goods had been confided, for transportation to the 'West Indies, and to sell them on the plaintiff's account, was not authorized, if they could not be sold at the port of destination, to send them to another market. The defendant, having shipped the goods to the Spanish Main, where they were destroyed by *an earthquake*, the plaintiff recovered the value of the articles, the court holding that the agent " had no right to hand over the goods to another person, and to give them a new destination."

The same doctrine is stated by Mr. Smith, in a note to his excellent work on " Mercantile Law," page 148, and in Dunlap's Paley, 177, Story on Agency, secs. 33, 34. We think, then, the plaintiffs should be charged with the value of the property sent to New York, to be ascertained by the market price of similar property in New Orleans at the time.

The second question involves the plaintiffs' right to retain the property shipped from New Orleans to Cincinnati, until their advance was paid.

As the shipment was made to Cincinnati at the defendant's request, we suppose the plaintiffs did not thereby part with their lien, unless they had voluntarily delivered it to the defendant. They certainly had the right to accompany it in person, or send it in charge of their agent, and, for all practical purposes, the carrier of the freight and the consignee of the factors may be regarded as holding such a relation.

The factor has his lien, not merely for a particular advance, but for his general balance also. He never loses it but by his own consent, or his neglect to enforce it, if it has been once legally vested.

In the case before us, it is proved the defendant was indebted to the plaintiffs for their advance on account of his consignments, when the property arrived in Cincinnati, and came to the possession of the plaintiffs' agent. It is claimed by the plaintiffs, that the whole amount of the bill accompanying the reshipment was then due. This is denied by the defendant; but it is immaterial whether the sum named in the bill was due or not. It is evident a considerable sum was due, and it was the duty of the defendant to have tendered the amount actually due, or that he admitted to be due, before he could regain the possession of the property. He refused to pay the bill, or to make the tender, and could not, therefore, object to the plaintiffs' retaining the possession, as their security for advances.

Nor did the right of the plaintiffs to sell the property shipped to Cincinnati, for the advances, cease by its arrival there; they still possessed the same power to dispose of it they had while it was at New Orleans. But they were bound to sell at the best price they could have obtained in this market, and are chargeable with any sacrifice.

We think the sales here were fairly made, and the agents exerted themselves for the benefit of all parties.

We charge the plaintiffs with the net amount of sales, deducting the alleged errors in tare, and all commissions that may have been charged, other than those of the agent.

The plaintiffs can not, certainly, sell the property and take it with the agent's commission, as well as their own, for performing the same office.

With these deductions from the balance claimed by plaintiffs, there will be judgment for the residue.